FILED

2007 Mar-23  PM 12:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CURTIS PEARSON,             )
             )
      Plaintiff,       )
             )
vs.                     )      Case No. 2:05-cv-580-TMP
             )
JAMES FINN, in his individual and official  )
capacity as Chief of Police.      )
             )
      Defendant.     )

<u>MEMORANDUM OPINION</u>

This cause is before the court on the motion for summary judgment filed by the defendant on November 22, 2006 (Doc. 56).[1] By order enter December 1, 2006, the parties were notified that the motion would be taken under submission twenty days later, and the plaintiff was advised of the provisions and consequences of Rule 56. Plaintiff filed his opposition to the motion on December 27, 2006. The parties have consented to the exercise of dispositive jurisdiction by the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). <u>See</u> Court Documents 75 and 77.

---

[1]     The other three defendants named in the original complaint were dismissed without prejudice under Rule 4(m), for want of service of process, by the court's order of January 27, 2006 (Doc. 31). The only remaining defendant is James Finn, individually and in his official capacity as chief of the Calera Police Department. This official capacity claim, however, is simply another method for naming Finn's employer, the City of Calera, as a defendant. <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985).

## Procedural Background

Plaintiff filed his original *pro se* complaint on March 17, 2005, asserting claims against four defendants.  Ultimately, plaintiff obtained service of process only on defendant Finn, named both individually and in his capacity as "chief" of the Calera police department.  There, he alleged that Finn violated his First and Fourteenth Amendment rights, as follows:

> In July 96, James Finn refused to allow plaintiff the right to file a criminal complaint after being shot by using discrimination remarks that black's had no rights in Shelby County; ....
>
> In 2004 after ending the impose tearm plaintiff was again denied the right to file a complaint.

[As in original].

On May 11, 2005, defendant Finn filed his motion to dismiss the complaint (Doc. 7), to which plaintiff responded on June 7, 2005. (Doc. 10).  After plaintiff asserted he had not received a copy of the motion to dismiss, the court directed the Clerk to mail him a copy, and plaintiff filed an additional response on July 19, 2005. (Doc. 14).  On August 15, 2005, the undersigned magistrate judge filed a report and recommendation, recommending the dismissal of plaintiff's claims based on events occurring before March 17, 2003, as barred by the two-year statute of limitation, but suggesting that he might amend his complaint to clarify his claim against Finn with respect to Finn's alleged refusal to allow the plaintiff to file a complaint in August 2004.  Plaintiff filed an amended complaint on August 30, 2005, in which he alleged more clearly that, not only did Finn discriminatorily deny him the opportunity to file a complaint in 1996, but also that:

> In Aug 2004 plaintiff ended the imposed term of incarceration and returned back to the city of Calera where he again entered the city's police department and again

spoke with officer James Finn, plaintiff requested again to file the criminal complaint against his ex-wife Annette Taylor who had shot him in July 96.

Curtis Pearson prose
Witness Emma Thomas

Plaintiff was then told by police Chief James Finn, "I already told you that Blacks had no rights in Shelby County to file a complaint, go ahead and file your suit if you win up there maybe you'll stand a chance of then filing a complaint on her.  Plaintiff then spoke with now the new Chief of police "Scott Palmer" who stated, Yes what was done was wrong, but I want nothing to do it do what you have to Curtis.

Court Document 17 [as in original].  On September 7, the undersigned filed a modification of the earlier report and recommendation, recommending that defendant's motion to dismiss be denied with respect to plaintiff's claim relating to the August 2004 denial.[2]  In an order entered by the court on January 27, 2006, all defendants, except Finn, were dismissed for want of service of process.  Thus, the only claim before the court is that in which plaintiff alleges that Finn, both individually and as chief of the Calera police department, engaged in purposeful racial discrimination when he refused to allow plaintiff to file a criminal complaint against his ex-wife in August 2004.

## **Summary Judgment Standards**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking  summary judgment "always

---

[2]    To be clear, insofar as plaintiff alleges events occurring in 1996 and 1999 as the bases for claims against defendant Finn, defendant raised the statute of limitation in his motion to dismiss, and the court concluded that anything prior to March 17, 2003, is time barred.  The same remains true today.  The only claim left is the claim arising from the August 2004 denial.

bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest on her pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id. at 248.  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249.  His guide is the same standard necessary to direct a verdict:  "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983).  However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989).  Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff.  Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988).  Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor.  Anderson, 477 U.S. at 255.  The non-movant need not be given the benefit of every inference, but only of every reasonable inference.  Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## Facts for Purposes of Summary Judgment

Applying these standards to the evidence before the court, the following facts appear to be undisputed or, if disputed, are taken in a light most favorable to the non-moving plaintiff.  In June 1996, plaintiff was charged with sexual abuse of his 17-year old daughter.  In July 1996, while going through a separation and divorce from his wife, Annette Taylor, a restraining order was entered by the Shelby County Circuit Court, requiring plaintiff to remain away from his wife.  While that order was in place, plaintiff's wife called him, saying that he would be allowed to get the rest of his clothing and personal effects from the marital home, and that she would pay him a sum of money ordered by the court to be paid.  Taylor came to the home where plaintiff was residing.  They spoke awhile, and then Taylor drove plaintiff to the marital home for him to retrieve his clothing.  While he was in the home doing so, he asked her about the money he was due to be paid.  Taylor became upset, walked to a different room, and, when plaintiff followed her, she pulled out a pistol.  Plaintiff and his wife struggled over the pistol until he could break free and run to the door to escape.  At the door, Taylor shot plaintiff once in the leg, and as he was going down the front steps of the home, she shot him again in the back.  Plaintiff was airlifted to a hospital where he recuperated for several days.

The Shelby County District Attorney's Office investigated the shooting and determined that Taylor had acted in self-defense.  There was evidence that plaintiff had threatened to kill his wife on earlier occasions, and that they had had physical confrontations in the past.  Not long before the shooting, the two had argued and plaintiff had thrown a hammer through a glass coffee table at the marital home.  Taylor was not criminally charged with the shooting.

Soon after his release from the hospital in 1996, plaintiff went to the Calera police department with the intention of filing a criminal complaint against Taylor.  He met with then-Police

Chief Finn, who told him that he could not file a complaint because, in Finn's words, "blacks in Shelby County don't have the right to file complaints." Plaintiff was charged with violating the restraining order by going to the marital home.

Not long after the shooting, plaintiff ultimately pleaded guilty to the sexual abuse of his 17-year old daughter, although he maintains his innocence today. He was sentenced to ten years in prison, split with three years to serve followed by five years probation. Plaintiff was in prison from 1996 to 1999.

In 1998, while still in prison, plaintiff filed an action against the City of Calera Police Department, asserting claims for defamation and denial of the right to file a criminal complaint against his ex-wife. The only named defendant in the action was the Calera police department. That action was dismissed as frivolous on December 7, 1998.

After being released from prison in 1999, plaintiff again talked to Chief Finn to inquire about filing a complaint against his ex-wife based on the 1996 shooting. Finn told plaintiff he had no right to file a complaint. Soon thereafter, plaintiff was arrest by Finn on a charge of probation violation based on the allegation that plaintiff had not reported to his probation officer in August 1999, after his release form prison. Ultimately, plaintiff's probation was revoked and he was returned to prison.

Plaintiff remained in prison until his release in July 2004. In August 2004, plaintiff was living with his sister in a house across the street from the Calera police department. While Finn was still chief, plaintiff again went to the police station to file a complaint against his ex-wife for shooting him. In his deposition, plaintiff described the meeting this way:

> Q:     Now, I want to be sure about one thing, Mr. Pearson. You told me on two
>        or three occasions that you spoke to Chief Finn, he told you that you didn't
>        have any rights to file a complaint against Annette?

A:      Yeah.

Q:      Correct?

A:      That's right.

Q:      And you are saying that you took from that —

A:      That's the way I took it.

Q:      The way you interpreted —

A:      Yeah.

Q:      — that comment was that blacks don't have rights to file a complaint?

A:      Me as a black person didn't have a right to file a complaint.

Q:      Okay.

A:      Is the way I took it.

Q:      But you are not telling this Court or this Judge that former Chief Finn said that blacks —

A:      No. No.

Q:      — do not have any rights?

A:      No. No. And I think I spoke to Jim Finn when I went and me and him talked and I thought I made that clear. I didn't — I'm not saying you came out of your mouth and said. It's just the way I took this, Jim Finn, when I sat and I told you I needed to press and you told me I didn't have a right. Are you telling me as a black person I don't have rights in here to file charges on somebody who hurt me? That's the way I took that.

Q:      That's your interpretation?

A:      That's my interpretation.

Q:      But you are not telling —

A:      Right. Right.

8

Q:     Let me get my question out.

A:     I am.

Q:     And I want to be sure — because I hear what — I think I hear what you are saying and I want to be sure I get the answer out.

A:     Yeah.

Q:     You are not telling this Court that he made the statement to you that I'm not going to charge Ms. Taylor with any criminal charges because blacks don't have any rights in Calera?

A:     No. No.

Q:     You are not saying that?

A:     Jim Finn, no, I wouldn't never lie on him and I would never — never say something that's not true towards him and I know he knows me enough to know that and my family down there. Now, that's the way I interpreted that, that when you said what you said, that's the way I took that.

Q:     You are not saying that he made any racially discriminatory remarks to you?

A:     I think that that was racial enough, you know, when you said that.

Q:     Well, what — no. You said that — your answer was that he said you don't have a right to file a claim?

A:     Yeah. I don't have a right.

Q:     I'm not asking about your interpretation of that.

A:     Yeah.

Q:     What I'm asking now is: Did he make any racially discriminatory remarks?

A:     That blacks don't have rights in Shelby County?

Q:     Yeah. He — he didn't — he didn't say — he didn't use that — that —

A:     No. He didn't use that —

9

Q:     Term?

A:     Right.

Q:     He didn't use the "N" word or —

A:     No.

Q:     — anything like that?

A:     No.

Q:     His comment — and let's be sure we are clear about this.  His comment to you was, you don't have a right to file a complaint against Annette?

A:     Yes.

Q:     And from that comment you interpreted —

A:     Yeah.  I would say so, yes.


See Plaintiff's Deposition, pp. 122-126.[3]


### Discussion

First, the court repeats the conclusion that the only claim properly before the court is the assertion that Chief Finn violated the plaintiff's right to equal protection by discriminatorily denying plaintiff the opportunity to file a criminal complaint against his ex-wide in August 2004.  Plaintiff alleges that this denial was based invidiously on his race.  Insofar as plaintiff attempts to state claims

---

[3]     The court notes that, in addition to the transcript of his deposition, plaintiff has attached a number of exhibits to his opposition to the motion for summary judgment.  None of the exhibits, however, can be properly considered by the court.  Although they purport to be affidavits from other people, none of them is signed under oath or based on personal knowledge, as required by Rule 56.  Thus, the only real evidence offered by the plaintiff that the court can consider is the deposition transcript.

for earlier occasions in 1996 and 1999 when Finn allegedly discriminatorily denied plaintiff the right to file complaints, such claims are both time barred by the two-year statute of limitation and barred by the doctrine of *res judicata*, in that plaintiff previously litigated these claims against Finn and Calera in an action dismissed by the United States District Court for the Middle District of Alabama. Plainly, both the 1996 and 1999 occasions on which Chief Finn told plaintiff he could not file the complaint occurred well more than two years prior to the filing of this action in 2005. Defendant raised the statute-of-limitations defense in his motion to dismiss, and the court initially recommended the granting of the motion on that precise ground. Later, when plaintiff amended his complaint, the court focused the issue then on the August 2004 allegation. Both the defendant and court have consistently understood that any of plaintiff's claims grounded on events prior to March 17, 2003, are time barred.

Additionally, with respect to the 1996 denial, the claim was litigated and found to be meritless in the action plaintiff filed in the Middle District. Chief Finn, in his official capacity, is the same essential defendant, the City of Calera, named in that action, and there is sufficient privity between Chief Finn officially and Chief Finn individually, that *res judicata* also precludes an action against him individually arising from the 1996 denial.[4] Plaintiff cannot re-litigate a claim he previously presented to a court on which there was a determination on the merits.

Turning to the only claim before the court — whether Chief Finn deprived the plaintiff of equal protection of the laws by denying him the chance to file a criminal complaint against his ex-wife solely because of plaintiff's race — there are no genuine issues of material fact and defendant

---

[4]     Plainly, the alleged 1999 denial and the instant 2004 denial arose after the 1998 litigation and, thus, are not barred by it.

is entitled to judgment as a matter of law.  First, there is a question under Alabama law whether Chief Finn was the proper official with which to "file a criminal complaint."  Under Alabama law, felony prosecutions are commenced by the action of a grand jury.  Citizens may file reports of criminal conduct with police officials, who, after investigation, may decide to commence a formal criminal prosecution by submitting the matter to a district attorney for presentation to a grand jury.  Misdemeanor charges may be filed with a warrant magistrate employed by either the city or county having jurisdiction over the matter.  There is no indication that Chief Finn was a warrant magistrate for the city of Calera.  For this reason, the court assumes that plaintiff is alleging not that Chief Finn denied him the chance to file a "criminal complaint," but the chance to submit a report of criminal activity, seeking an investigation by Calera police.

Second, there can be no question that Chief Finn and other police officials may have legitimate reasons to deny a citizen the right to file a report of criminal activity or to decline to investigate a matter.  For instance, the activity may be too old to prosecute, outside of the jurisdiction of the police official, or, as in this case, already resolved by investigation.  Police officials may also deny that opportunity for no reason at all, as long as it does not involve prohibited discrimination. It is clear that there is no constitutional right to insist that police investigate or prosecute someone else.  Thus, not every "denial" of the right to file a criminal report or complaint against someone else involves invidious discrimination.  For that reason, the plaintiff must prove by substantial evidence that the denial of that opportunity by Chief Finn in August 2004 was motivated by an illegal and intentional racial animus, as opposed to some other reason not prohibited by law.

It is here that the plaintiff's case fails.  His own testimony explicitly acknowledges that Chief Finn never actually expressed any racial reason or animus for his refusal to accept the plaintiff's

12

complaint against his ex-wife.   Rather, plaintiff "interpreted" the refusal that way.   That interpretation is insufficient to establish that a genuine issue of fact that Chief Finn engaged in prohibited racial discrimination.   An equally likely explanation for his refusal to accept plaintiff's complaint is the fact that Chief Finn was aware that the Shelby County District Attorney's Office already had investigated the shooting and had rejected it for prosecution.   To avoid summary judgment, plaintiff must come forward with "substantial" evidence supporting an inference of racial discrimination as the motivation, and he has failed to do that.   Thus, both as to Chief Finn's individual capacity and his official capacity, the evidence fails to show a genuine issue of material fact precluding summary judgment.

By separate order, the court will grant Chief Finn's motion for summary judgment and will dismiss this case with prejudice.

DONE this 23rd day of March, 2007.


T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE